IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>NARCISCO RAMOS-LOPEZ,<br><br>    Defendant. | Case No. 23-CR-4059-LTS-KEM<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

    The Government moves the court to issue a writ of habeas corpus ad prosequendum, ordering Immigration and Customs Enforcement (ICE) to produce Defendant Narcisco Ramos-Lopez for an arraignment in this matter. Doc. 16. Though generally a routine request, the facts in this case show otherwise.

    A complaint was filed against Ramos-Lopez on August 30, 2023, charging him with being found after illegal reentry. Doc. 2. In the sealed criminal cover sheet filed with the complaint, the Government noted that Ramos-Lopez was in ICE custody. Doc. 1. On August 31, 2023, Ramos appeared for an initial appearance, at which time the Government made an oral motion for detention. Docs. 7, 8. The court found the Government failed to show that Ramos-Lopez posed a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A) and denied the detention motion. Doc. 7. The court ordered Ramos-Lopez be released on an Appearance Bond and Order Setting Conditions of Release (Doc. 11), but ordered his temporary detention under 18 U.S.C. § 3142(d)(1)(B)[1]

---

[1] The statute provides the court must order temporary detention, not to exceed 10 days, if the court finds that defendant is not a citizen or lawful permanent resident and also that defendant "may flee or pose a danger," so as to allow the Government time to notify ICE. I found that although Defendant did not pose "a serious risk that [he] will flee" (as required for a hearing under 18 U.S.C. § 3142(f)(2)(A)), he "may flee" for purposes of 18 U.S.C. § 3142(d)(2), based

(Footnote continued . . .

and directed the Government to notify ICE to determine if the agency wished to take him into custody (Doc. 10). Doc. 7. Ramos-Lopez was taken back into ICE custody, bringing the court to the current situation, where the Government asks the court to writ Ramos-Lopez back to federal custody. In its motion for the writ, the Government specifically requests that Ramos-Lopez be returned to ICE custody after his arraignment hearing. Doc. 16.

This court has previously addressed a similar issue in a prior case involving the same Assistant United States Attorney. Chief Judge Leonard T. Strand's thorough and well-reasoned opinion in *United States v. Villatoro-Ventura* addressed the competing interests within the Executive Branch of criminally prosecuting individuals with illegal reentry and administratively deporting them from the country, as well as the interplay between the Bail Reform Act (BRA)[2] and the Immigration and Nationality Act (INA).[3] In that case, the defendant, who had been ordered released on conditions under the BRA, was taken into ICE custody after being released from custody of the United States Marshals Service.[4] This court took up two competing motions—the Government's motion to revoke the release order and the defendant's motion to dismiss the indictment with

---

on his history of providing false information to authorities, his lack of family ties in this country, and his wife and children living in his home country. I now conclude I erred in temporarily detaining Ramos-Lopez under section 3142(d)(2) because ICE was aware of his status and that he had been arrested—indeed, Ramos-Lopez was in ICE custody at the time of his arrest on the criminal complaint (Doc. 1). *See **United States v. Villatoro-Ventura***, 330 F. Supp. 3d 1118, 1135 (N.D. Iowa 2018) (concluding section 3142(d) did not apply because ICE was already aware of the defendant's status as an illegal alien). Indeed, a plain reading of the statute shows that when the court temporarily detains a defendant under section 3142(d), the court does not reach the issue of whether a defendant should be released on conditions under section 3142(f) unless the underlying agency declines to take custody of the defendant under as provided for under section 3142(d). *See id.* at 1140-41.

[2] 18 U.S.C. §§ 3141-3156.

[3] 8 U.S.C. §§ 1101-1537.

[4] ***Villatoro-Ventura***, 330 F. Supp. 3d at 1122-23.

2

prejudice.[5] The court concluded that the decision to release a defendant on conditions under the BRA did not prevent ICE from detaining and deporting the defendant.[6] Because "it [wa]s apparent that ICE moved forward with removal proceedings"—the defendant was scheduled to be deported in two weeks—the court found the Government was not "attempt[ing] to evade [the] release order under the [Bail Reform Act] by using ICE detention as a proxy for pretrial detention."[7] The court thus denied Defendant's motion to dismiss the indictment.[8]

In addition, in *Villatoro-Ventura*, the court annulled a writ of habeas corpus ad prosequendum (to obtain the defendant's appearance from ICE[9]) after declining to revoke the previously issued release order.[10] The court provided analysis of how ICE could defer deportation until the conclusion of a criminal prosecution.[11] The Government must choose its priority here, but I decline, in Chief Judge Strand's words, to "protect the Executive Branch from itself by [issuing a] writ of habeas corpus ad prosequendum."[12]

---

[5] *Id*. at 1121.

[6] *Id*. at 1139-43; *see also* **United States v. Baltazar-Sebastian**, 990 F.3d 939, 947 (5th Cir. 2021) (vacating order to preclude ICE from detaining defendant until conclusion of criminal prosecution); **United States v. Vasquez-Benitez**, 919 F.3d 546, 553-54 (D.C. Cir. 2019) (affirming release order under the BRA but vacating portion of the order that prohibited the Marshals Service from turning the defendant over to ICE custody); *but see* **United States v. Valdez-Hurtado**, 638 F. Supp. 3d 879, 897 (N.D. Ill. 2022) (discussing interplay between BRA and INA, finding Marshals Service had no basis to detain defendant on civil detainer from ICE after being ordered released in criminal case, and ordering defendant's immediate release).

[7] *Id.* at 1141-42.

[8] *Id.* at 1143.

[9] The court issued the writ to ensure the court could resolve the pending motions in the criminal case (the Government's motion to revoke the release order and the defendant's motion to dismiss).

[10] *Id.* at 1143.

[11] *Id.* at 1130-31.

[12] *Id.* at 1143.

Other courts have since addressed the exact issue presented here, and relying on the reasoning in *Villatoro-Ventura*, denied the Government's request to writ a defendant from ICE custody to appear at hearings in the criminal case where the defendant had previously been ordered released on conditions in the criminal case.[13]

> Federal law already gives the United States Attorney's Office all the power it needs to secure [defendant]'s appearance for trial. As Judge Strand explained in *Villatoro-Ventura*, when an alien is subject to a removal order, "the Executive Branch 'shall remove the alien from the United States within a period of 90 days,' or within the 'removal period'" fixed by statute. But this deadline is subject to regulations authorizing any "departure-control officer" to prevent an alien's departure from the United States for a variety of reasons—including any reason deemed "prejudicial to the interests of the United States under the provision of 8 C.F.R. § 215.3." This regulation addresses the very circumstance presented by [defendant]'s case—an alien subject to deportation who also is a party to a pending criminal case in federal court.
>
> The regulatory structure of this regulation takes a bit to unwind. Section 215.3 provides that the "departure from the United States of any alien within one or more of the following categories shall be deemed prejudicial to the interests of the United States." One category of prejudice arises if the alien "is needed in the United States … as a party to, any criminal case … pending in a court of the United States"—unless, that is, the "appropriate prosecuting authority" consents to the alien's departure. Also, a related regulation provides, "No alien shall depart … from the United States if his departure would be prejudicial to the interests of the United States under § 215.3." Indeed, these regulations mandate every departure-control officer who "knows or has reason to believe that the case of an alien comes within the provisions of § 215.3 shall temporarily prevent the departure of such alien."[14]

---

[13] ***United States v. Villa***, No. 18-20062-01-DDC, 2019 WL 1454048, at *2-4 (D. Kan. Apr. 2, 2019) (noting that ICE "possesses the authority to keep [defendant] in the United States for his trial," and "[w]hether it elects to do so is up to [the Department of Homeland Security], the Department of Justice, and the Chief Executive Officer of the United States," and declining to issue writ as the "court has no business deciding how a co-equal branch of government should resolve the priorities to favor one executive agency or another"); ***United States v. Mancebo-Garcia***, No. 23-CR-132-JFH-1, 2023 WL 3330233, at *3-4 (N.D. Okla. May 9, 2023) (adopting rationale in *Villa*, and noting the government was unable to provide any contrary authority).

[14] ***Villa***, 2019 WL1454048, at *3 (cleaned up) (quoting ***Villatoro-Ventura***, 330 F. Supp. 3d at 1128; 8 C.F.R. §§ 215.2, 215.3).

4

It appears possible that here, unlike in *Villatoro-Ventura*, the Executive Branch is attempting to circumvent this court's release order under the Bail Reform Act by detaining Ramos-Lopez in ICE custody while the criminal case proceeds. Indeed, the motion for the writ specifically requests that Ramos-Lopez be returned to ICE custody at the conclusion of his arraignment hearing. Doc. 16. The Government has been warned of such conduct:

> [R]elief [such as dismissal of the indictment] may be warranted in a particular case if it becomes clear that the Executive Branch is using ICE solely to hold a defendant for his or her federal criminal trial after the court has ordered release under the BRA. A policy of simply stashing a defendant in ICE custody, with no effort to proceed under the INA, would raise serious concerns as to the defendant's rights under the BRA. . . . If that does occur in a particular case, I will most certainly consider it to be a violation of the BRA and will fashion an appropriate remedy.[15]

The same AUSA that handled the *Villatoro-Ventura* case submitted the motion for a writ in this case. Especially in light of that, I find it astounding that the Government seeks to pursue this course of action. Indeed, it took only brief research on this issue to find the cases outlined in this order. The court finds no basis on which to issue the requested writ in this case. As fully discussed in *Villatoro-Ventura*, the Executive Branch is free to prioritize deportation over prosecution and detain Ramos-Lopez (through ICE), but the court will not issue writs to essentially allow the Government to use ICE detention to evade the court's release order. Accordingly, the court **DENIES** the Government's motion for a writ of habeas corpus ad prosequendum (Doc. 16). The court will schedule an arraignment by separate order.

**SO ORDERED** on September 19, 2023.

*Kelly K.E. Mahoney* (signature)
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[15] ***Id.*** at 1141-42.